[Cite as *State v. Amos*, 2012-Ohio-2964.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

STATE OF OHIO                                        :
                                                     :          Appellate Case No. 2011-CA-59
          Plaintiff-Appellee                         :
                                                     :          Trial Court Case No. 11-CR-337
v.                                                   :
                                                     :
CHARLES AMOS                                         :          (Criminal Appeal from
                                                     :           Common Pleas Court)
          Defendant-Appellant                        :
                                                     :
                              . . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2012.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg.#0082337, Clark County Prosecutor's Office, 50 East Columbia
Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
          Attorney for Plaintiff-Appellee

LINDA JOANNE CUSHMAN, Atty. Reg. #0043543, Cushman Law Office, 150 North
Limestone Street, Suite 206, Springfield, Ohio 45502
          Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Charles Amos appeals from his sentence and conviction

for Domestic Violence.   Amos contends that his conviction is not supported by the evidence.

He further claims that the trial court erred by permitting hearsay testimony.

{¶ 2}    We conclude that there is evidence in the record upon which a reasonable juror could find Amos guilty of the offense of Domestic Violence.   We further find no merit to Amos's claim that the trial court improperly permitted the introduction of hearsay at trial. Accordingly, the judgment of the trial court is Affirmed.

## I.   The Altercation

{¶ 3}    This matter arises from a Domestic Violence incident between Amos and Takoya Crawford.   Following the incident, Amos was indicted on one count of Domestic Violence in violation of R.C. 2919.25(A).   The matter proceeded to jury trial at which the following evidence was adduced.

{¶ 4}    Crawford and Amos have one minor child together as the result of an intermittent, eight-year relationship.   According to Crawford, on May 16, 2011, she and her son went to her sister's house around two o'clock in the afternoon.   It was Crawford's birthday, and she and her sister watched their respective children while they played.   Amos called her right after she arrived at her sister's residence, and called her again "at least a dozen" times more.   According to Crawford, Amos was upset with her because she was at her sister's rather than "at home with him."   Crawford left her sister's home around midnight.

{¶ 5}    While at her sister's, Crawford consumed a twenty-four ounce malted beer product.   She began drinking the alcohol around seven and finished it around ten.   She and her son also ate dinner with her sister.

{¶ 6}    According to Crawford, after she left her sister's, she received a call from a friend, Odysee Wilkerson, who wanted to "see [her] on [her] birthday."   So Crawford pulled

into her apartment complex and met Wilkerson in the entranceway of her apartment complex. Crawford parked her car, turned it off, and left her son in the car while she stood right by the car talking to Wilkerson.

{¶ 7}     Crawford and Wilkerson talked for about an hour when Amos came walking past, calling Crawford names such as "drunk," "whore" and "bitch." At some point, Amos returned to where the women were talking, and both women decided to get into their respective cars. As Crawford was getting into her car seat, Amos grabbed the door and grabbed her around the shirt-collar area. Crawford could not remember whether she grabbed back at Amos to push him out. Amos then let go and jumped onto the hood of her car. Crawford shut her door and began to drive about five feet with Amos on the hood. Amos was laughing and moving around on the hood, so she stopped the car after going forward about five feet.

{¶ 8}     Amos got off the car, and Crawford began to drive backwards away from him. She then parked the car and got out. Wilkerson took the child from the car when Amos came toward Crawford again and began another physical altercation. Crawford was "body-slammed [with her] knee hitting the ground and [Amos was] on top of [her] and [he was choking her]." Crawford asked Amos to "get off me. Please stop. You're hurting me." Amos was "straddled" over her and choking her. He said "I'll kill you, bitch." Crawford asked Wilkerson to call the police, but was not able to tell whether Wilkerson complied. Eventually Amos stopped choking her and "basically just jumped up." At that point Crawford got into Wilkerson's car, where Wilkerson had Crawford's son. The police arrived about five to ten minutes later. Amos had walked away at that point.

**{¶ 9}** Wilkerson's testimony essentially corroborated Crawford's. Wilkerson testified that she and Crawford were talking beside their parked cars when Amos came walking past. Amos looked "angry" and kept looking at the women. Wilkerson told Crawford that Amos "didn't seem to be right," and suggested that if he returned, they leave and find another place to meet. The women continued talking. Wilkerson noticed Amos walking back toward them. Wilkerson advised Crawford to get in her car and meet her at another place down the street.

**{¶ 10}** Wilkerson turned to get in her car when she saw Amos jump onto the hood of Crawford's car. Wilkerson was trying to drive her car away, when she noticed the couple "tussling" outside the car. Wilkerson walked over toward Crawford's car and realized that Crawford was yelling for her to call the police. Crawford was attempting to get away when she fell to the ground and Amos pinned her down and began choking her. Crawford was yelling for Amos to stop and get off. Wilkerson went to her car to get her phone and call the police. Wilkerson also took Crawford's son to her vehicle to calm him down. She observed the couple get off the ground, yell at each other, and then Amos took off into the woods. At that point Crawford came and sat in Wilkerson's car until the police arrived.

**{¶ 11}** Amos also testified at trial. He claimed that on the day in question he woke up to find Crawford and his son gone. Around three in the afternoon, he happened to walk by Crawford's sister's house, which is a half-hour away from his apartment. He observed Crawford's car as well as his son playing with the son's cousins. The next time he saw Crawford was when he encountered her that night in the entrance to the apartment complex

while walking home from a friend's house.

{¶ 12}   Amos said he saw Crawford crying and standing with Wilkerson.   He did not see his son.   Crawford called to Amos, but Amos kept walking because he "didn't want any confrontation."   However, he returned a few minutes later because he wanted to see if his son was in the car.   When he got to Crawford's car, Amos observed his son asleep in the front seat wrapped in a blanket.   Amos told Crawford that he was calling the police because he knew she had been drinking and had their son in the car.

{¶ 13}   Amos testified that Crawford jumped in her car and turned on the car in an attempt to leave.   He testified that she hit him with the vehicle, causing him to fly up and land on the hood of the car.   Crawford drove away fast for about forty feet when she hit the brakes, causing Amos to fly off the car.   Then Crawford got out of the car and "tackled" Amos. Amos testified that he tried to get up, but Crawford was holding him to the ground by his hair.  He noticed her phone on the ground, so he grabbed it and called 911.   He testified that he talked to the dispatcher and reported that Crawford was assaulting him.   He claims that Crawford kicked the phone out of his hands.    Amos stated that he was never on top of Crawford or straddling her.   He also denied putting his hands or arms on her neck or trying to choke her.

{¶ 14}   Amos testified that eventually Crawford lost her grip on his hair, and he jumped up and walked back to his apartment.   He testified that he was in the apartment for about one minute when he heard Crawford "trying to kick in the door."   He testified that he unlocked the door and tried to run past her, but that she "grabbed [him] by the hair" and began punching him in the face.   He testified that this continued for about two minutes and that he

then yanked free and he ran away. He testified that Crawford then got into her car and drove toward him, as if to hit him, before she "sped off back towards the front of [the apartment complex]." Amos testified that he then used a neighbor's telephone to place another call to 911.

{¶ 15} The recordings of the 911 calls placed by Amos and Wilkerson were introduced as exhibits at trial. In the one placed by Amos during the altercation at the front of the complex, Crawford's voice is heard pleading with Amos to "get off me," while Amos is heard yelling "get off of you, my ass," at Crawford. The voices can be heard, only faintly, on the recording of Wilkerson's call. During the entirety of Wilkerson's call, she continues to tell the dispatcher that Amos has Crawford pinned down. In the third call, made by Amos from a neighbor's home, Amos tells the dispatcher that he got into a "scuffle" with his "baby's mom" and that she had been driving drunk with the child in the car.

{¶ 16} Springfield police officer Jeffrey Ashworth testified that he responded to the scene and spoke with Crawford. He testified that she told him that her "baby's father" had choked her. Crawford was "visibly crying, upset." She had redness around her neck area and a small abrasion on one of her elbows. He could smell alcohol on her breath. After speaking with Crawford, Ashworth arrested Amos for Domestic Violence.

{¶ 17} Following trial, Amos was found guilty as charged. The trial court sentenced Amos to a prison term of eighteen months. From his conviction and sentence, Amos appeals.

## II.   The Verdict Is Supported by the Evidence,
## and Is Not Against the Manifest Weight of the Evidence

{¶ 18}  Amos's First Assignment of Error states:

{¶ 19}  "THE GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE."

{¶ 20}  Amos contends that the evidence does not support a finding that he committed the offense of Domestic Violence.

{¶ 21}  Arguments based on the sufficiency of the evidence challenge whether the State presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law.  *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1999). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 22}  In contrast, when reviewing a judgment under a manifest-weight-of-the-evidence standard of review, the court " 'review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387.

**{¶ 23}** The offense of Domestic Violence is proscribed by R.C. 2919.25, which states, in relevant part, that "no person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). "Knowingly" is defined by R.C. R.C. 2901.22(B): "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{¶ 24}** As noted above, the evidence in this case is based mainly upon the testimony of Amos, Crawford and Wilkerson. Amos's account differs from that of the two women. Amos testified that Crawford was the aggressor, while the two women testified that Amos was the attacker. The 911 tapes introduced at trial are more consistent with the women's testimony than with Amos's testimony.

**{¶ 25}** Essentially, the question of whether Amos was the aggressor hinges upon credibility. In this case, the jury apparently found Crawford and Wilkerson to be more credible. The credibility of witnesses and the weight to be given to their testimony are matters for the jurors as triers of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact finder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No.

16288, 1997 WL 476684 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 26} Reviewing the record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. There is evidence that a reasonable juror could rely on in finding that: (1) Amos held Crawford on the ground and attempted to choke her; and (2) that his actions were done with the knowledge that he was physically harming her. Thus, we conclude that the State presented sufficient evidence upon which to support the conviction and that the conviction was not against the manifest weight of the evidence.

{¶ 27} Amos's First Assignment of Error is overruled.


**III. The Defendant's Prior, Out-of-Court Statements Concerning His Reasons for Initiating 911 Calls, Being Statements by the Adverse Party, Are Not Hearsay; They Are Also Relevant, Since They Explain Why the Defendant May Have Called 911 on this Occasion, Despite Having Been the Aggressor**

{¶ 28} Amos asserts the following for his Second Assignment of Error:

{¶ 29} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL THROUGH ADMISSION OF INADMISSIBLE HEARSAY EVIDENCE."

{¶ 30} Amos contends that the trial court erred by permitting Crawford to provide

testimony constituting hearsay evidence. During the State's case in rebuttal, Crawford testified as follows:

Q: Has the defendant ever called 911 before with you?

A: Yes.

Q: Has he ever told you why he does that?

* * *

A: To basically think that I would be the one to go to jail.

{¶ 31} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). However, a statement does not constitute hearsay if it "is offered against a party and is the party's own statement * * *." Evid.R. 801(D)(2)(a).

{¶ 32} In this case, the trial court determined that the testimony provided by Crawford concerning Amos's prior, out-of-court statement, was not hearsay , because the prior, out-of-court statement was offered against the party who made the statement. The trial court further found that it was proper rebuttal because it was intended to rebut Amos's claim that he called 911 because Crawford was the aggressor. We agree.

{¶ 33} Crawford's testimony essentially claimed that Amos had made a statement to her in the past that if he called 911, she would be taken to jail. This testimony was used to rebut Amos's claim that he was the victim and that, as the victim, he called 911 for help. Again, the recording of the 911 call placed by Amos during the altercation appears to corroborate Crawford's and Wilkerson's account of the event – Crawford can be heard in that recording pleading with Amos to get off of her, while he is heard yelling at her.

**{¶ 34}** The trial court did not err by permitting Crawford's testimony. It was neither hearsay nor irrelevant. Amos's Second Assignment of Error is overruled.


### IV. Conclusion

**{¶ 35}** Both of Amos's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

FROELICH and CANNON, JJ., concur.



(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).



Copies mailed to:

Lisa M. Fannin
Linda Joanne Cushman
Hon. Douglas M. Rastatter